IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KALEEL MALCOLM NAGBE,<br><br>*Defendant*. | Case No. 1:24-MJ-490 |

**UNITED STATES' MOTION FOR
<u>REVOCATION OF MAGISTRATE JUDGE'S ORDER OF RELEASE</u>**

Pursuant to 18 U.S.C. § 3145(a)(1), the United States hereby asks the Court to revoke the magistrate judge's order releasing the defendant, Kaleel Malcom Nagbe, on conditions. As explained below, the defendant presents a substantial risk of flight and a danger to the community. Indeed, each of the statutorily prescribed factors that guide a court's detention determination weigh against pretrial release. Accordingly, the defendant should be detained.

<u>**BACKGROUND**</u>

**A.    Facts and Procedural History**

As articulated in greater detail in the affidavit submitted in support of the criminal complaint against the defendant, this matter stems from a traffic stop conducted by Pentagon Force Protection Agency ("PFPA") Officer Natalee Walker on December 7, 2024. On that date, Officer Walker stopped the defendant for driving on the Pentagon Reservation while holding a handheld personal communication device, in violation of Virginia Code § 46.2-818.2. When Officer Walker initially approached the vehicle, she detected the distinct odor of marijuana emanating from the

1

vehicle. Accordingly, she ordered the defendant, who was driving the vehicle, and his lone passenger out of the car.[1]

The defendant complied with Officer Walker's directive and exited the vehicle. However, after Officer Walker informed the defendant that she would be conducting a probable-cause search of the vehicle, the defendant jumped back into the driver's seat and attempted to flee as multiple officers hung onto the vehicle. After officers thwarted the defendant's efforts to put the vehicle in drive and three officers managed to secure him, the officers searched him and located a Glock handgun in his underwear. The firearm was loaded with 16 rounds in the magazine and an additional round in the chamber. It had also been outfitted with an all-black automatic selector switch on the backplate of the slide that is used to render semi-automatic firearms fully automatic.[2] A search of the trunk of the defendant's vehicle yielded approximately 14 pounds of suspected marijuana. The defendant was arrested on probable cause

On December 9, 2024, the Honorable Lindsay R. Vaala, United States Magistrate Judge, issued a criminal complaint and arrest warrant, charging the defendant with one count of being a prohibited person unlawfully in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

---

[1] The defendant's passenger was eventually found to possess narcotics and marijuana on his person. No marijuana or narcotics were found on the defendant's person.

[2] Under federal law, "machinegun" is a term of art, defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The term also includes "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun[.]" *Id.*

2

On December 12, 2024, following the completion of a Pretrial Services report ("PTSR"), the defendant appeared before Judge Vaala for a detention hearing.[3] Upon the conclusion of the hearing, the magistrate judge ordered the defendant released on a personal recognizance bond, subject to standard conditions as well as certain special conditions, including, among other things: remaining in the custody of a third-party custodian, home detention, location monitoring, supervision by the Pretrial Services Office, and travel restrictions. On the motion of the government, the magistrate judge agreed to stay entry of the release order until December 13, 2024, at 4:00 p.m.

On December 13, 2024, the Honorable Rossie D. Alston, Jr., United States District Judge, entered an order granting the government's request to extend the aforementioned stay and scheduling a hearing on the instant motion for December 18, 2024 at 1:00 p.m.

B.      **Correction of the PTSR**

The PTSR reflects that the defendant was arrested on April 19, 2022 for firearm-related offenses that were *nolle prosequi'd* in the Montgomery County Circuit Court on May 19, 2022. The PTSR further reflects that on April 21, 2023, the defendant was arrested on additional firearm and drug-related offenses in the Montgomery County Circuit Court and was sentenced to the aforementioned term of imprisonment on July 2, 2023. However, at the defendant's detention hearing conducted on December 12, 2024, there was some confusion after the defendant informed his counsel that he had been out of custody for more than a year.

After the hearing, undersigned counsel independently reviewed the Maryland Judiciary Case Search and the defendant's criminal record as reported by the National Crime Information

---

[3] The United States has not yet obtained a transcript of the detention hearing. As such, references herein to evidence and testimony presented at the hearing are based solely on undersigned counsel's recollection. A transcript has been requested by the United States and will be provided to the Court for review once it is received.

3

Center ("NCIC") and believes Page 3 of the PTSR to be incorrect. Based on undersigned counsel's review of the defendant's record, undersigned counsel believes the defendant was arrested on April 19, 2022 and that his charges were *nolle prosequi'd* on May 19, 2022. Undersigned counsel believes that on July 7, 2022, those same previous charges and (and others) were indicted in the Montgomery County Circuit Court and the defendant was sentenced in *that* case on April 21, 2023.[4]

To be clear: the affidavit in support of the criminal complaint is correct. The defendant has one prior conviction for Possession of a Firearm by a Minor for which he was sentenced to 5 years' imprisonment with all but 367 days suspended imposed on April 23, 2023. The instant offense constitutes the second time, and not the third time, that law enforcement has found the defendant in possession of a firearm in a vehicle.

## **APPLICABLE LAW**

Where, as here, a defendant is ordered released pending trial by a magistrate judge, the government may file a motion for revocation of the order with the court having original jurisdiction over the offense. 18 U.S.C. § 3145(a)(1). When the district court acts on such a motion, it does so *de novo*, and although the court must make an independent determination of the proper pretrial detention or conditions of release, *see United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001); *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989), it may incorporate into its analysis any evidence or reasons relied on by the magistrate judge, *see United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009), and it is free to utilize the record of the proceedings before the magistrate judge, *see United States v. Marra*, 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001); *United States v. Cole*, 715 F. Supp. 677, 677 (E.D. Pa. 1988).

---

[4] The charges filed on July 7, 2022 are listed as having the same offense date (April 19, 2022) as the charges that were *nolle prosequi'd* in May 2022.

If the Court determines that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community," the defendant *must* be detained pending trial. 18 U.S.C. § 3142(e). The factors to be considered in determining whether to release a defendant pending trial are set forth in 18 U.S.C. § 3142(g) and include: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's pretrial release.

"For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." *Stewart*, 19 F. App'x at 48. While the government must prove by clear and convincing evidence that the defendant poses a danger to the community and that no conditions of release can reasonably assure the safety of others, the government is only required to show by a preponderance of the evidence that the defendant poses a risk of flight and that no conditions of release can reasonably assure his appearance at trial. *See United States v. Mallory*, 268 F. Supp. 3d 854, 861 (E.D. Va. 2017).

## ARGUMENT

Respectfully, the magistrate judge erred in finding that the defendant should be released pending trial. An analysis of the factors set forth in § 3142(g) reveals that there are no conditions that can reasonably assure either the defendant's future appearances or the safety of any other person and the community. Accordingly, the magistrate judge's order should be revoked and the defendant should be ordered detained.

### A.   The § 3142(g) Factors Weigh Uniformly in Favor of Detention

Congress has prescribed the criteria that courts are to consider in making bail determinations. Here, each of the factors tips towards detention.

#### 1.   The Nature and Circumstances of the Offense (18 U.S.C. § 3142(g)(1))

To say that the offense charged in this case is serious is to state the obvious. *See* 18 U.S.C. § 3142(g)(1) (specifically directing court to consider "whether the offense . . . involves a . . . firearm"). Indeed, possession of a loaded firearm by an individual on probation for a prior firearm-related offense and found in possession of more than a dozen pounds of suspected marijuana would be serious enough, but here, the gravity is amplified by the fact that the firearm possessed by the defendant had no external safety and was affixed with a device rendering it capable of firing automatically. It is a minor miracle, given the circumstances surrounding the defendant's arrest, that nobody was seriously injured in the struggle or effort to remove the loaded firearm from his underwear.

#### 2.   The Weight of the Evidence (18 U.S.C. § 3142(g)(2))

The weight of the evidence is extremely strong. The defendant's encounter with the PFPA officers is captured on multiple body-worn cameras. The high definition footage shows the defendant, in broad daylight, attempting to leave the scene of a traffic stop after being informed that officers would be conducting a search based upon probable cause. The ensuing struggle—and the extremely dangerous situation that the defendant created—are also captured on video, as is the retrieval of the firearm in question.

#### 3.   The History and Characteristics of the Defendant (18 U.S.C. § 3142(g)(3))

The defendant's history and characteristics also militate in favor of detention. With respect to § 3142(g)(3)(A), the PTSR is rife with inconsistent and contradictory information supplied by the defendant himself. The defendant informed the Pretrial Services Officer that he has been living

with his father in Martinsburg, West Virginia, for the last year and a half. He also informed that pretrial services officer that he was employed by his father's real estate company and had been so employed since December 9, 2023. However, the defendant's father informed the same Pretrial Services Officer that the defendant had been living with the defendant's mother in Baltimore, Maryland. He further stated that he did not know where the defendant worked and that he thought the defendant may have started his own construction company approximately one year ago.

It should be noted that on November 27, 2024—roughly two weeks before he told the Pretrial Services Officer that he had been living in West Virginia with his father and would resume living there if released—the defendant told the probation office supervising him in Maryland for his previous firearm charge that he lived with his mother in Baltimore.

The defendant's lack of candor to Pretrial Services, and by extension to the Court, is troubling and calls into question his amenability to supervision. *See United States v. Maxwell*, 510 F. Supp. 3d 165, 175 (S.D.N.Y. 2020) ("Most notably, the Defendant's pattern of providing incomplete or erroneous information to the Court or to Pretrial Services bears significantly on the Court's application of the third factor to the present case."). After a lengthy detention hearing, there is still no clarity as to where the defendant has been living and how he has been supporting himself financially since he was released from custody in Maryland, despite being on probation the entire time.

Turning to 18 U.S.C. § 3142(g)(3)(B), at the time of his arrest, the defendant was on probation after serving a custodial sentence for possessing a firearm in Maryland.

    4.    <u>The Nature and Seriousness of the Danger Posed by the Defendant (18 U.S.C. § 3142(g)(4)</u>

The defendant clearly poses a risk of harm to the community. Despite being prohibited from possessing a firearm and being on probation for doing so, he was found to be in possession

7

of a machinegun. While those facts alone are serious, the combination of drugs and firearms – as was present in this case – significantly increases the risk that others (not to mention the defendant himself) will be the victims of gun violence.

> B. **Conditions of Release Cannot Meaningfully Reduce the Risk of Harm to the Community and the Serious Risk of Flight**

In response to the information presented at the detention hearing, among other conditions, the magistrate judge ordered that the defendant be subject to home detention, with supervision by Pretrial Services, location monitoring technology, and a third-party custodian. These conditions do little in this case to reduce the defendant's serious risk of nonappearance. Moreover, given that the defendant has already demonstrated that he will not abide by terms and conditions of release, it can hardly be said that such conditions will significantly ameliorate the risk of harm he poses to the community.

Conditions of release only protect the public if the defendant follows them, and the defendant has already shown that he will not. The magistrate judge ordered the defendant not to possess firearms, but he was already forbidden from possessing firearms (and on probation for doing so) when he was encountered with a machinegun less than a week ago. The defendant was similarly prohibited from possessing illicit substances when he was stopped with pounds of marijuana in his vehicle. Being of good behavior, not violating the law, maintaining employment, and residing where one is supposed to are standard terms for all probationers, but the defendant appears to have been not doing any of these things while already under court supervision.

Further, the conditions of release do not mitigate the serious risk of flight. While the defendant has not previously failed to appear for court hearings, he obstructed justice and attempted to flee the scene of the crime in this case. As other courts have recognized, "location monitoring is inadequate because ankle monitors can be removed and ensure only a reduced head

start should a defendant decide to flee." *United States v. Wang*, No. 23 CR. 118-3 (AT), 2023 WL 4551637, at *3 (S.D.N.Y. July 14, 2023) (citing *United States v. Freeman*, No. 21 Cr. 88 (S.D.N.Y.), Bail Hr'g 5:4-6, Feb. 19, 2021. ECF No. 50 ("Anyone who knows the technology of electronic monitoring knows that it is far from foolproof."), *and United States v. Zarger*, No. 00 Cr. 773, 2000 WL 1134364, at *1 (E.D.N.Y. Aug. 4, 2000) (stating that electronic monitoring "at best . . . limits a fleeing defendant's head start")). As such, location monitoring merely provides notice of, and does little to prevent, flight.

Lastly, having the defendant's mother responsible for reporting violations is unreliable and the United States has outstanding concerns regarding the suitability of the third-party custodian. If the defendant has indeed been living with his mother while on probation in Maryland, then that is who was responsible for him when he committed the instant offense. It is unclear to the United States how the defendant will suddenly defer to her authority living in her home if he was in fact already doing so when he committed the instant offense. Furthermore, the PTSR reflects that the defendant's mother works from 8:00 a.m. to 4:30 p.m. Monday through Friday.[5] At the detention hearing, the defendant's mother informed the court that she is required to work in-person on three of those five days. The PTSR reflects that her employment is located in Washington, D.C., so presumably this 8:30 a.m. to 4:30 p.m. schedule does not account for commuting time. Her need to be away from the home for long hours brings into question whether she can adequately serve as a suitable third-party custodian.

## **CONCLUSION**

The factors set out in 18 U.S.C. § 3142(g) weigh heavily in favor of detention. The defendant, while on probation for a firearm-related offense, possessed a loaded machinegun. Faced

---

[5] Notably, the instant offense occurred on a Saturday.

with the possibility that the firearm in his pants or the marijuana in his trunk would be discovered, he attempted to flee the scene and put himself and officers at risk in the process. After he was arrested, he provided Pretrial Services with housing and employment information that is inconsistent with the information he provided his Maryland probation officer and the information provided by his parents. The defendant plainly constitutes a danger to the public and a risk of flight. Accordingly, the United States respectfully urges this Court to revoke the magistrate judge's release order and detain the defendant pending trial.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
John C. Blanchard
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

  I certify that on December 13, 2024, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will cause a true and accurate copy of this document to be transmitted to counsel of record.

By: _____/s/_____
John C. Blanchard
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3999
Fax: (703) 299-3980
John.Blanchard@usdoj.gov